# CHARLESTON

Meadow River Lumber Co. v. McClung, Assessor,

AND

Gauley Coal Land Co. v. McClung, Assessor.

Submitted September 23, 1914.   Decided September 29, 1914.

Taxation—*Valuation—Correction by Assessor.*

> After the land and personal property books have been certified to the assessor by the board of equalization and review, pursuant to section 18, chapter 29, serial section 902, Code 1913, mandamus will not lie to compel the assessor to correct the valuation of lands assessed in accordance with some previous minute or order of the board, or to extend the taxes in accordance with such corrected valuations. The final act of such board in so certifying said books to the assessor is conclusive upon him, and upon the board after its adjournment.

(Williams, Judge, absent.)

Original mandamus by the Meadow River Lumber Company and the Gauley Coal Land Company against J. W. McClung, Assessor.

*Writ of Mandamus Denied.*

*Henry Gilmer* and *S. N. Pace,* for petitioner.

*Fred O. Blue,* for respondent.

Miller, President:

The alternative writs command defendant, as assessor of Greenbrier County, to forthwith extend the values of petitioners' fee simple lands in Meadow Bluff and Williamsburg districts of said county, on the land books thereof for the year 1914, at $20.00 per acre, and to compute and extend the taxes for that year, on the result so obtained, or that he appear and show cause why he refuses to do so.

Petitioners predicate their right to this relief on the alleged action of the board of equalization and review of said county, on July 15, 1914, as evidenced by a certified copy of what purports to be its minutes of July 17, 1914, as certified by

the clerk of the county court, and ex officio clerk of said board, exhibited with their petitions.

These minutes in substance are: "The Board of Review had before them on Wednesday, July 15, 1914, The Gauley Coal Land Company and others who made motion that their lands be assessed as follows: Land in fee reduced from $23.00 to $20.00 per acre. Timber at $12.00 per acre. Mineral only at $8.00 per acre." And they also show that the board "placed the assessment as above", and also ordered that "all lands of the same kind in character to be placed at same assessment."

These are the minutes of July 17, 1914. But there is exhibited with respondent's return an abstract of the land books for the same year, as certified by each member of the board on July 23, 1914, pursuant to section 18, chapter 29, serial section 902, Code 1913, showing no changes in the valuation of petitioners' lands as valued by the assessor, and their certificate is that they had "examined each and every item and valuation fixed by the assessor on the foregoing pages of this land book and have made such corrections and fixed such valuations as now appear in the foregoing record, and that this record shows the complete valuations and assessments of the real estate of Greenbrier county for the year 1914, prepared, fixed and approved by us as required by law."

As so certified, this land book, as the return of respondent and the evidence shows, was delivered to him, as required by said section 18, of chapter 29, of the Code, for the extension by him of the levies, as provided thereby.

Respondent denies that, being present at the session of said board, he promised the board, or counsel for petitioners, to make the changes on the land book, according to the order aforesaid, but admits that after the board adjourned on July 23, 1914, he did attempt to act in accordance with said order, but avers that while in the act of attempting to do so he was directed by the prosecuting attorney of said county to desist therefrom, and to extend the taxes on petitioners' lands at the valuation of $23.00, as fixed by respondent and as certified to him by said board, and respondent answers that he

found it impossible to comply with the said order, further than as to the company specifically mentioned in the order, "for the reason that he did not know the tracts really meant and intended to be covered by said order."

While it appears that minutes of the meetings of said board were kept by the clerk, there seems to be no provision of the law therefor. Said section 18, of chapter 29, of the Code, covering the subject, provides that at the meeting thereby provided, "the assessor shall submit to said board the land books and personal property books for the current year as prepared by him"; that said books "shall be completed in every particular at the time they are submitted to the board, except that the levies shall not be extended," and that then the "board· shall proceed to examine and review" said books "and of its own motion or on sufficient cause being shown by any person, shall add to said land and personal property books the names of persons, the value of personal property and the description and value of real estate liable to assessment in said county, omitted from said assessment books, by the assessor; they shall correct all errors in the names of persons, in the description of property upon such ·books and in the assessment and valuation of property thereon, and they shall cause to be done whatever else may be necessary to make said assessment as returned by the personal property assessor comply with the provisions of this chapter, and to the end that all property shall be assessed at its true and actual value; the board shall pass upon each valuation and each interest, and shall enter the valuation of each as fixed by it in a separate column in the land and personal property books prepared for the purpose; if it shall be determined by said board that any property or interest is assessed at more or less than its true and actual value, it shall increase or reduce the value of such property, fixing it at its true and actual value." The copy of the land book exhibited shows a separate column provided for correction by the board, but it is blank as to the lands of petitioners.

Said section, among other things, further provides: "After said board shall complete the review and equalization of the land and personal property books, a majority of

said board shall endorse and sign a statement to the effect that the same is the completed assessment of said county for the year for which it has been prepared and approved by the board of equalization and review; then said land and personal property books shall be delivered to the assessor and the levies upon the same extended as provided by law.'' And the last paragraph gives to any taxpayer dissatisfied with the valuation of the property as fixed by said board the right to apply for relief, as provided by section 129, of the same chapter, that is by appeal to the circuit court within thirty days from the adjournment of said board, such appeal to be determined upon the evidence before and certified by said board.

The question now presented is what effect should the order of the board made on July 17, respecting its action on a previous day, namely, July 15, have upon its final act on July 23, certifying back to the assessor the land books, without having in fact made the changes in the valuations on the books, as required by the statute? The minutes of prior meetings undoubtedly evidence what the board then intended to do; but is not its final and completed act to be evidenced by the return made to the assessor in conformity to the law? Has the assessor power to correct this final act by the minutes of a previous session of the board kept by its clerk? The board may have determined in the last instance, as it might lawfully do, not to make the changes in valuation previously ordered. Presumptively it did do so, for the requirement of the law is that it make and certify on the land books the changes made. The law does not contemplate that the assessor or any other officer shall perform this duty for the board after its adjournment, and after its members have by their certificate placed their final act of approval on the books. Such a practice would likely lead to fraud, error and endless confusion. The law is too plain to admit of any such construction. There is some evidence of practices of this kind in Greenbrier County, but neither custom nor practice, contrary to law, can make law, or justify its sanction by the courts, or its perpetuating it by the extraordinary writ of mandamus.

After the books were so certified there was still the right of

appeal, available within thirty days from adjournment. We think that was petitioners' remedy, not mandamus against the assessor. We must, therefore, deny the writ.

*Writ of Mandamus Denied.*